UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

'08 MJ 1886

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Magistrate Case No._____ |
| ) | |
| Plaintiff ) | COMPLAINT FOR VIOLATION OF |
| v. ) | Title 8, U.S.C., Section |
| Ashley Brooke LUKIN (D1), ) | 1324(a)(2)(B)(iii)- |
| Justin Hart LAMPERT (D2), ) | Bringing in Illegal Alien(s) |
| Gustavo GUZMAN-Miranda (D3), ) | Without Presentation |
| Jose Luis MURILLO-Rodriguez (D4), ) | |
| ) | Title 8, U.S.C., Section 1326 |
| Defendants. ) | Attempted Entry After Deportation |

The undersigned complainant being duly sworn states:

### Count I

On or about **June 18, 2008**, within the Southern District of California, defendants, **Ashley Brooke LUKIN (D1)** and **Justin Hart LAMPERT (D2)**, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Gustavo GUZMAN-Miranda (D3)**, and **Jose Luis MURILLO-Rodriguez (D4)** had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens, and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

### Count II

On or about **June 18, 2008**, within the Southern District of California, defendant **Gustavo GUZMAN-Miranda (D3)**, an alien, who previously had been excluded, deported and removed from the United States to **Mexico**, attempted to enter the United States with the purpose; i.e. conscious desire, to enter the United States at the **San Ysidro, California, Port of Entry**, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

### Count III

On or about **June 18, 2008**, within the Southern District of California, defendant **Jose Luis MURILLO-Rodriguez (D4)**, an alien, who previously had been excluded, deported and removed from the United States to **Mexico**, attempted to enter the United States with the purpose; i.e. conscious desire, to enter the United States at the **San Ysidro, California, Port of Entry**, without the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8, United States Code, Section 1326.

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Sara Esparagoza, United States Customs
and Border Protection Enforcement Officer

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **19th** DAY OF **JUNE, 2008.**

UNITED STATES MAGISTRATE JUDGE

## PROBABLE CAUSE STATEMENT

The complainant states that **Gustavo GUZMAN-Miranda (D3)** and **Jose Luis MURILLO-Rodriguez (D4)** are citizens of a country other than the United States; that said aliens have admitted they are deportable; that their testimony is material; that it is impracticable to secure their attendance at trial by subpoena; and that they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144. **D3** and **D4** are also being charged with Title 8 USC 1326.

On June 18, 2008, at approximately 1:30 AM, **Ashley Brooke LUKIN (D1)** arrived at the San Ysidro Port of Entry and applied for admission to the United States from Mexico as the driver of a white 2005 Chevrolet Express Van. Accompanying **D1** as the only visible passenger in the vehicle was **Justin Hart LAMPERT (D2)**. **D1** and **D2** both declared United States citizenship by virtue of birth in the United States. **D1** and **D2** both stated they did not have their birth certificates. **D1** presented her Arizona driver license and **D2** presented his California identification card to a Customs and Border Protection (CBP) Officer. The CBP Officer received two negative customs declarations from **D1** and **D2** who explained they were in Mexico dropping off clothes to a homeless shelter. The CBP Officer questioned **D1** as to ownership of the vehicle, to which **D2** responded the vehicle belonged to their pastor.

During an inspection of the vehicle, the CBP Officer checked underneath and noticed that the bottom had a large metal plate covering more than half of the vehicle. The CBP Officer walked to the back of the vehicle, looked underneath and saw what appeared to be a person's head. The vehicle and its occupants were subsequently escorted to secondary for further inspection. While being escorted to secondary, **D1** made the statement, "I was doing this for a little money so I wouldn't be homeless anymore".

In secondary, CBP Enforcement Officers had to lift and remove the right hand seat lever in order to release the bench seat that was directly behind the driver and passenger seat. Upon removing the bench seat, CBP Enforcement Officers lifted up the floor carpet and discovered two access panels. Upon opening the access panels, two persons were found concealed within a non-factory compartment. The two persons were removed from the compartment and identified as citizens of Mexico without legal documents to enter the United States and are now identified as: **Gustavo GUZMAN-Miranda (D3)** and **Jose Luis MURILLO-Rodriguez (D4).**

CBP Enforcement Officers obtained fingerprints from all four vehicle occupants and queried them through the Integrated Automated Fingerprint Identification System (IAFIS). IAFIS identified **D3** and **D4** as citizens of Mexico and who have been previously deported from the United States. IAFIS also linked **D3** and **D4** to FBI and Immigration Service records. Queries through the Deportable Alien Control System (DACS) and the Central Index System (CIS) reveal **D3** was ordered deported by an Immigration Judge on or about June 20, 1995 and was subsequently removed from the United States to Mexico on or about July 17, 1995. DACS and CIS records revealed **D4** was also ordered deported by an Immigration Judge on or about October 13, 1992 and was subsequently removed from the United States to Mexico on or about October 14, 1992. Immigration Service records contain no evidence that **D3** or **D4** have applied for or received permission from the United States Attorney General or his designated successor, the Secretary of the Department of Homeland Security, to legally re-enter the United States.

**(Probable Cause Statement to be Continued)**

**(Probable Cause Statement Continued)**

During a videotaped interview, **D1** was advised of her Miranda rights and elected to answer questions without the benefit of counsel. **D1** admitted that **D2** is her boyfriend and that they have been staying at a hotel in Tijuana, Mexico. **D1** freely admitted to knowledge that the vehicle contained an undocumented alien concealed within it. **D1** admitted that she believed one young boy was concealed within the vehicle. **D1** admitted that **D2** made the smuggling arrangements concerning the drop off point and the amount of money they were to be paid.

During a separate videotaped interview, **D2** was advised of his Miranda rights and elected to answer questions without the benefit of counsel. **D2** denied knowledge of the concealed aliens. **D2** denied that he and **D1** were boyfriend and girlfriend and stated that they were just friends. **D2** stated that he and **D1** have not been staying at a hotel together in Tijuana, Mexico. **D2** stated that he met **D1** two years ago while in San Diego, California and had just recently met back up with her. **D2** stated that he did not know where **D1** got the vehicle from. **D2** stated that **D1** picked him up because he needed a ride to a friend's house in Chula Vista, California.

During a separate videotaped interview, **D4** was advised of his Miranda rights and elected to answer questions without the benefit of counsel. **D4** admitted that he is a citizen of Mexico by birth in Distrito Federal, Mexico. **D4** admitted he does not have legal documents to enter into the United States. **D4** admitted he made arrangements with Pancho while at a hotel in Tijuana, Mexico and was going to pay $3,800 USD to be smuggled into the United States. **D4** stated that he was traveling to Los Angeles, California to reunite with his family. **D4** admitted he has been previously deported from the United States and has not applied for or received permission from the United States government to legally re-enter the United States.